[No. A061398. First Dist., Div. Three. Jan. 31, 1994.]

HUNTING WORLD, INCORPORATED, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
CHARLES W. BOGAR et al., Real Parties in Interest.

**COUNSEL**

Heller, Ehrman, White & McAuliffe, Paul Alexander, Robert B. Hawk and John G. Andersen for Petitioner.

No appearance for Respondent.

Kinsella, Boesch, Fujikawa & Towle, Catherine H. Coleman, Crosby, Heafey, Roach & May, Ezra Hendon, Malcolm B. Wittenberg, Scott D. Baker, Morgan W. Tovey and Kit L. Knudsen for Real Parties in Interest.

**OPINION**

**CHIN, J.**—We consider whether notice of lis pendens may be used by a creditor to give notice of an action seeking to set aside a debtor's fraudulent transfer of real property. We conclude such an action affects title to real property within the meaning of lis pendens law and will support a notice of lis pendens. However, creditors who misuse the procedure should be severely sanctioned.

Hunting World, Incorporated (Hunting World), challenges expungement of its notice of lis pendens recorded against property transferred from Charles W. Bogar to his wife, Jo Ann Bogar. Hunting World's primary action against Charles W. Bogar is a federal lawsuit claiming trademark infringement and counterfeiting of Hunting World merchandise. (*Hunting World, Incorporated* v. *Reboans, Inc.* (N.D.Cal. 1992) 24 U.S.P.Q. (BNA) 1844 (No. 92-1519 BAC).) The federal action does not affect title to or the right to possession of real property and would not support a notice of lis pendens. However, Hunting World also filed in state court a second action, under the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.), to set aside as fraudulent the transfer from Charles W. to Jo Ann Bogar. The notice of lis pendens provides notice of the state action, not the federal lawsuit.

■ After hearing arguments that equated the fraudulent transfer action with an action seeking to impose a constructive trust or equitable lien (see *Wardley Development Inc.* v. *Superior Court* (1989) 213 Cal.App.3d 391 [262 Cal.Rptr. 87]; *Urez Corp.* v. *Superior Court* (1987) 190 Cal.App.3d 1141 [235 Cal.Rptr. 837]), the superior court expunged notice of lis pendens. Implicitly, the court decided the fraudulent transfer action does not affect title to or the right to possession of real property because Hunting World is not seeking title to the property but a way to reach assets of Charles W. Bogar in the event of a money judgment in federal court against him.

We disagree. The court could not properly expunge notice of lis pendens under the "real property claim" prong of the expungement statutes. (Code Civ. Proc., § 405.31.)[1] We direct issuance of a peremptory writ of mandate.

### Facts and Procedures

On April 21, 1992, Hunting World filed an action in the United States District Court for the Northern District of California against Charles W. Bogar and others. The complaint alleged that the defendants engaged in the business of selling counterfeit purses, bags, fanny packs, and other goods bearing counterfeit Hunting World trademarks. The complaint sought an injunction, delivery for destruction of all items bearing the counterfeit trademarks, money damages, and a constructive trust over profits realized from the infringement. The court immediately issued a temporary restraining order and an order to seize any counterfeit property.

On May 11, 1992, Charles W. Bogar quitclaimed to his wife, Jo Ann Bogar, his interest in their residence at 3916 Park Antonio in Calabasas Park, California.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

On January 6, 1993, Hunting World filed a complaint in San Francisco Superior Court against Charles W. and Jo Ann Bogar to set aside as fraudulent the May 11, 1992, conveyance. (Civ. Code, § 3439 et seq.) Hunting World then recorded, in the recorder's office for Los Angeles County, notice of pendency of that action (lis pendens).

The Bogars promptly moved to expunge notice of lis pendens. On March 29, 1993, without reaching the issue of the lawsuit's probable validity, the court granted the motion. This petition followed. (§ 405.39.)

### Expungement of Lis Pendens

In 1992, the Legislature repealed and reenacted the lis pendens statutes "in substantially revised form." (Legis. Counsel's Dig., Assem. Bill No. 3620, Stats. 1992 (1991-1992 Reg. Sess.) ch. 883.) The central principle of the new legislation remains the same: a party to an action who asserts a real property claim may record in the county of the property a notice of pendency of the action in which the real property claim is alleged. (Compare former § 409, Stats. 1986, ch. 540, § 1, p. 1926, with § 405.20, Stats. 1992, ch. 883, § 2.)

The new legislation significantly changed standards for expunging notices of lis pendens. Under the former law the court would expunge notice of lis pendens unless the party recording it showed "to the satisfaction of the court, by a preponderance of the evidence, that: [¶] (a) The action does affect title to or right of possession of the real property described in the notice; and [¶] (b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith. . . ." (Former § 409.1, Stats. 1991, ch. 112, § 1.) Under the new law the court shall order the notice expunged (without an undertaking) if it finds either "that the pleading on which the notice is based does not contain a real property claim" (§ 405.31, the "real property claim" prong) or "that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim" (§ 405.32, the "probable validity" prong). Good faith and a proper purpose are no longer sufficient to maintain notice of lis pendens. The claimant must show a probably valid claim.

The new statutes define a " '[c]laimant' " as a "party to an action who asserts a real property claim and records a notice of the pendency of the action" (§ 405.1) and a " '[r]eal property claim' " as "the cause or causes of

action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the use of an easement . . . ." (§ 405.4.)

If adequate relief can be secured to the claimant by the giving of àn undertaking, the court may order expunged notice of a probably valid real property claim. (§ 405.33.) It may also, at any time upon motion, require the claimant to give the moving party an undertaking as a condition of maintaining the notice in the record title. (§ 405.34.)

### Constructive Trust Case Law

During the 1980's, conflict arose over whether notice of lis pendens was appropriate for an action for money damages if the plaintiff also sought to impose a constructive trust or equitable lien on real property. *Coppinger* v. *Superior Court* (1982) 134 Cal.App.3d 883, 891 [185 Cal.Rptr. 24], held that the action to impose a constructive trust was "an action affecting title to or possession of real property" within the meaning of the lis pendens statutes. The same court applied *Coppinger* to an equitable lien that plaintiffs sought to secure payment of the cost of real property improvements they made. (*Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135, 141 [192 Cal.Rptr. 388].)

Within months after *Okuda, Burger* v. *Superior Court* (1984) 151 Cal.App.3d 1013 [199 Cal.Rptr. 227] led a chorus of decisions disagreeing with *Coppinger* and *Okuda*. At first, other decisions merely questioned and/or distinguished *Coppinger*. (See *Moseley* v. *Superior Court* (1986) 177 Cal.App.3d 672, 677 [223 Cal.Rptr. 116]; *Deane* v. *Superior Court* (1985) 164 Cal.App.3d 292, 296-297 [210 Cal.Rptr. 406]; *Burger, supra,* at pp. 1017-1018.) Before long, however, the tone turned to outright rejection of *Coppinger* and *Okuda*. (See *La Paglia* v. *Superior Court* (1989) 215 Cal.App.3d 1322, 1326-1329 [264. Cal.Rptr. 63]; *Wardley Development Inc.* v. *Superior Court, supra,* 213 Cal.App.3d at pp. 394-399; *Urez Corp.* v. *Superior Court, supra,* 190 Cal.App.3d at p. 1149.) The courts concluded " '. . . that allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages.' [Citation.]" (*La Paglia, supra,* at p. 1329, and *Wardley, supra,* at p. 394, quoting *Urez, supra,* at p. 1149.)

The Real Property Law Section of the State Bar of California proposed the new lis pendens law and submitted a report with it. (Real Property Law Section of State Bar, Proposed New Lis Pendens Law With Cal. Code Comments (Sept. 1991) [hereafter State Bar Report].) The Assembly Committee on Judiciary, the Senate Committee on Judiciary, and the Office of

Senate Floor Analyses of the Senate Rules Committee relied heavily upon that report in their analyses of the proposed legislation. (Assem. Com. on Judiciary Rep. on Assem. Bill No. 3620 (May 6, 1992) (1991-1992 Reg. Sess.); Sen. Com. on Judiciary Rep. on Assem. Bill No. 3620 (Aug. 11, 1992) (1991-1992 Reg. Sess.); Off. of Sen. Floor Analyses, Sen. Rules Com., Rep. on Assem. Bill No. 3620 (Aug. 13, 1992) (1991-1992 Reg. Sess.).) We take judicial notice of the State Bar Report and the analyses by these legislative committees.

The State Bar Report acknowledged the above described conflict, observed that the definition of "real property claim" in the new law "neither includes nor excludes claims of constructive trust or equitable lien," and suggested the law in this area be left for judicial development. (State Bar Rep., *supra*, at p. 7.) It noted, however, that "[s]hould case law continue to allow use of the lis pendens procedure in cases claiming a constructive trust or equitable lien, any abuse which might have previously occurred should be mitigated by the provisions of [Code of Civil Procedure section] 409.330 (requiring proof by the claimant of the probable validity of the claim) and the provisions of [Code of Civil Procedure section] 409.350 (allowing the court to require a bond from the claimant)." (State Bar Rep., *supra*, at pp. 7-8.) Finally, it predicted that continuing availability of injunctions, attachments, and other relief in connection with real property claims would reduce the perceived need for notices of lis pendens in constructive trust or equitable lien cases. (*Id.*, at p. 8.)

### The Uniform Fraudulent Transfer Act

Neither the new legislation nor the State Bar Report mentioned the particular species of lawsuit involved here, a separate action under Civil Code section 3439 to set aside a fraudulent transfer of real property. On the surface, such an action appears to be a "real property claim" because it is a "cause . . . of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property . . . ." (§ 405.4.) We conclude the "real property claim" prong of the statute does apply. (Cf. *In re Lane* (9th Cir. 1992) 980 F.2d 601, 604; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1993) ¶ 15:33 rev. # 1, 1993, p. 15-6; Cal. Lis Pendens Practice (Cont.Ed.Bar 1983) §§ 2.7, 3.12, pp. 31, 63 [all considering former lis pendens law].)

The Uniform Fraudulent Transfer Act, Civil Code section 3439 et seq., provides that a creditor may bring an action to set aside a fraudulent transfer to the extent necessary to satisfy the creditor's claim (Civ. Code, § 3439.07, subd. (a)(1)) and permits provisional remedies such as attachments, injunctions, and appointment of receivers (Civ. Code, § 3439.07, subd. (a)(2),

(a)(3)(A), (a)(3)(B)). Although it does not provide for notices of lis pendens, it does not exclude them either.

The Uniform Fraudulent Transfer Act defines a " '[c]reditor' " as "a person who has a claim" (Civ. Code, § 3439.01, subd. (c)) and a " '[c]laim' " as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, continent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" (Civ. Code, § 3439.01, subd. (b)). "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (a) With actual intent to hinder, delay, or defraud any creditor of the debtor. . . ." (Civ. Code, § 3439.04.)

*Analysis*

The Bogars contend a uniform fraudulent transfer action, like a request for a constructive trust or an equitable lien, is a creditor's remedy for recovering money and will not support a notice of lis pendens. They argue for a narrow construction of lis pendens law because notice of lis pendens is a powerful weapon subject to abuse. They suggest that, in applying the test for whether a notice of lis pendens may be used, the court must look through the pleadings to ascertain the purpose of the party seeking to maintain notice of lis pendens.

The Bogars propose an unnecessary and unwarranted extension of the *Urez/Wardley* line of decisions. Extension of *Urez/Wardley* is unnecessary because the new lis pendens legislation is designed to curb abuses of lis pendens procedures by requiring the recording party to show by a preponderance of evidence that the action is probably valid. (§ 405.32.) If a claimant has no convincing evidence of a fraudulent transfer, it will not meet this burden, and the court will expunge notice of lis pendens. If the claimant does show a probably valid claim, the court may still order notice of lis pendens expunged if adequate relief for the claimant may be secured by the giving of an undertaking. (§ 405.33.) When the claimant is a creditor, an undertaking will usually provide adequate relief. The court may also protect the property owner by requiring an undertaking as a condition of maintaining the notice in the record title. (§ 405.34.)

Extension of the *Urez/Wardley* line of decisions is not warranted because the clear wording of the "real property claim" prong of lis pendens law covers a claim to set aside a conveyance of real property. In *Urez, Wardley,* most of their precursors, and their progeny, constructive trust or equitable

lien causes of action were *appended to* lawsuits centering on money damages. Those courts could conclude that the actions covered by those notices of lis pendens *primarily* sought money damages and did not affect title to real property. (*La Paglia* v. *Superior Court, supra,* 215. Cal.App.3d at p. 1329; *Wardley Development Inc.* v. *Superior Court, supra,* 213 Cal.App.3d at p. 393; *Urez Corp.* v. *Superior Court, supra,* 190 Cal.App.3d at p. 1149; *Deane* v. *Superior Court, supra,* 164 Cal.App.3d at p. 297; *Burger* v. *Superior Court, supra,* 151 Cal.App.3d at p. 1019.) Here, the action covered by the notice of lis pendens *affects only title to real property.*

Permitting notice of lis pendens here does not impose an intolerable burden on real property owners. The uniform fraudulent transfer action is a limited lawsuit. If the transfer was legitimate, a property owner should be able to defeat the lawsuit by demurrer, summary judgment motion, or prompt trial. Moreover, the property owner may seek to expunge the notice of lis pendens at any stage of the fraudulent transfer proceedings and may be entitled to attorney fees and costs if successful. (§ 405.38.) Unjustified delay by the recording party in prosecuting the fraudulent transfer action or in revealing its evidence of fraud will undermine its position that the action is probably valid.

This ruling must not be interpreted by creditors as a green light to tie up real property by filing baseless or questionable fraudulent transfer complaints, recording notices of lis pendens, and waging prolonged battles over expungement. Section 128.5 permits a court to order sanctions against parties, attorneys, or both who file actions without merit or designed to harass the opposing party. Trial courts should liberally impose these sanctions upon any who file fraudulent transfer actions and record notices of lis pendens before uncovering credible evidence of fraud.

### The Bogars' Request for Dismissal

In their return to the alternative writ, the Bogars ask us to dismiss the writ as improvidently granted. They say Hunting World broke a promise to the federal court to dismiss the state action and to pursue the fraudulent transfer claim in federal court. They argue we should not address the merits of the lis pendens question when we could yield to the federal court.

Hunting World responds that early in the proceedings it tried to move the fraudulent claim cause of action to federal court, but the Bogars resisted on the ground the matter was being litigated in state court. It notes the federal court lacks jurisdiction to review the expungement order it challenges in this proceeding.

We agree with Hunting World. The Bogars, who secured the erroneous expungement ruling from superior court, cannot now insulate that ruling from appellate review by requiring transfer of the underlying matter to federal court. If Hunting World misled the federal court or broke a promise to it, sanctions should come from that court, not this.

## Disposition

The court erred in expunging notice of lis pendens under the "real property claim" prong of the expungement statutes.

Let a peremptory writ of mandate issue directing the Superior Court of the City and County of San Francisco to vacate its order expunging notice of lis pendens.

White, P. J., and Werdegar, J., concurred.